UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 12-26(1) (JRT/JSM) |
| Plaintiff, | |
| v. | **ORDER ON REPORT AND RECOMMENDATION DATED AUGUST 6, 2012** |
| WAKINYON WAKAN MCARTHUR, | |
| Defendant. | |

Andrew R. Winter and Steven L. Schleicher, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Frederick J. Goetz, **GOETZ & ECKLAND PA**, 43 Main Street Southeast, Suite 505, Minneapolis, MN 55414, for defendant.

The United States filed a superseding indictment against defendant Wakinyon Wakan McArthur and other defendants, alleging that McArthur is a member of the Native Mob gang and engaged in a conspiracy to participate in racketeering activity, among other crimes. United States Magistrate Judge Janie S. Mayeron issued a report and recommendation ("R&R"), recommending that McArthur's motion to suppress statements be denied in part, and that his motion to suppress evidence obtained as a result of searches and seizures be denied. (Docket No. 731.) McArthur has filed objections to these recommendations. (Docket No. 756.) Having reviewed *de novo* those portions of the Magistrate Judge's R&R to which McArthur objects, *see* 28 U.S.C. § 636(b)(1),

D. Minn. L.R. 72.2, the Court will adopt in part and reject in part the R&R. The Court will grant McArthur's motion to suppress statements because the United States has failed to demonstrate that the statements were not in response to custodial interrogation without *Miranda* warnings. The Court will deny McArthur's motion to suppress evidence because the warrants authorizing the searches and seizures were supported by probable cause.[1]

## I.   MOTION TO SUPPRESS STATEMENTS

### A.   Background

McArthur first objects to the Magistrate Judge's recommendation that his motion to suppress certain statements be denied. On February 18, 2011, police officers executed a search warrant at McArthur's residence. (Tr. of Mots. Hearing ("Tr.") 159, May 30, 2012, Docket No. 640.) Officers arrived at the residence at approximately 7:55 AM, knocked on the door, and entered after someone opened the door. (Tr. 160, 167.) Once inside, the officers ordered McArthur to the ground and put him in handcuffs. (Tr. 162.) Officers directed McArthur and his girlfriend to sit on the couch in the living room. (Tr. 162, 167-68.) There were at least ten officers in the home. (Tr. 85.) The United

---

[1] The Court will deny McArthur's motion to suppress his statements made on February 18, 2011, that were overheard by ATF Special Agent Russell Traurig as moot, based on the United States's representations to the Magistrate Judge that it would not use those statements

States conceded that, during this search of McArthur's residence, McArthur was in custody. (*See* R&R at 23-25.)[2]

While McArthur was in custody in the home, he had conversations with police officers, including Investigator Jerome Wilhelmy. (Tr. 88-89, 176.) The Magistrate Judge concluded that Wilhelmy interrogated McArthur about an alleged hit out on a Native Mob member and that, because McArthur was not given *Miranda* warnings, McArthur's statements in response to this questioning should be suppressed. (R&R at 25-27.) There was no objection filed to this recommendation.[3]

The issue raised by McArthur's objections is whether the Court should suppress additional statements, allegedly overheard by Mille Lacs Tribal Police Department Officer Michael Dieter, that McArthur made while in custody during the search of his home. Dieter stood near McArthur for several minutes while the other agents searched McArthur's residence, and Dieter did not ask McArthur any questions during this time. (Tr. 162.)

Dieter testified that, while he stood near McArthur, there was a small plastic baggie of marijuana on the coffee table in plain view. (Tr. 163, 170.) Dieter allegedly heard McArthur state that the marijuana was for recreational use. (Tr. 163, 170.)

---

[2] There has been no objection to the Magistrate Judge's conclusion that McArthur was in custody, and this Court concludes based on the evidence presented that McArthur was in custody.

[3] For the reasons outlined by the Magistrate Judge, this Court likewise concludes that McArthur's statements in response to Wilhelmy's questioning should be suppressed.

McArthur made this statement approximately a minute or two after being seated on the couch. (Tr. 170.)

Dieter acknowledged that McArthur made the statement about recreational use after an officer lifted the baggie off the coffee table "right in front of McArthur's face," looked at the baggie, and set it back down. (Tr. 170-72, 175.)[4] Dieter testified that he did not recall officers saying anything about the marijuana before McArthur made the statement about recreational use, although Dieter did not rule out that an officer may have said something to him. (Tr. 171-72, 175.) Specifically, Dieter responded at the evidentiary hearing as follows:

> Q. [W]hen that agent picked [up the marijuana] and looked at it they said something, didn't they?
> A. I can't – I don't believe so. No, I don't recall.
> Q. Okay. So they could have said something?
> A. Possibly. I don't remember it . . . .
> Q. And you can't remember if [the officer] said anything while he was examining [the marijuana]?
> A. No . . . .
> Q. [An agent] picked the Baggie up right in front of [McArthur's] face, may have said something, and that's when [McArthur] made the statements, correct?
> A. Right.
> Q. And you don't remember [McArthur] interacting with any agent at this scene?
> A. Not specifically. I know it happened but I'm not specific as far as what happened or what the conversations were about. A lot of the other agents have more of a history with him than I do.

---

[4] It is unclear from the testimony if McArthur made the statement about recreational use when the officer picked up the bag, when he looked at it or held it, or after he put the bag down.

> Q. So I'm sorry. To be clear, were there other agents who were having conversations with McArthur?
>
> A. Yes, but I don't recall who or what was talked about.

(Tr. 171-72, 175-76.)

In addition to the statement about recreational use, Dieter heard McArthur say that "[t]here ain't gonna be no big bust here today." (Tr. 163.) Dieter testified that he did not observe any officers ask McArthur a question that would have prompted McArthur to make that statement. (*Id.*) Dieter did not testify regarding when the "big bust" statement occurred. It is unclear if McArthur made this statement after the comment about recreational use, and it is also unclear when either statement overheard by Dieter occurred in relation to Wilhelmy's questioning.[5]

When McArthur allegedly made these two statements, he appeared calm, there were no signs of alcohol intoxication or controlled substance use, and he appeared to understand what was happening. (Tr. 163-64.) There is no evidence that officers made promises or threats to McArthur. (*See* Tr. 164.)

Dieter's memory was unclear on a variety of facts surrounding McArthur's time in custody. Dieter could not remember which officers were tasked with searching the living room (Tr. 170), if anyone was searching the living room when McArthur made the statements at issue (Tr. 171), anything other officers said while the warrant was being executed (Tr. 173), whether Wilhelmy had a conversation with McArthur (Tr. 174), or any conversations that McArthur had with other agents and whether those conversations

---

[5] Dieter stated that a conversation between Wilhelmy and McArthur could have occurred "right in front" of him but that he did not remember it. (*See* Tr. 174-75.)

involved gangs or drugs (Tr. 175-76). The Court notes that Dieter's statement that he did not know if anyone was searching the living room when McArthur made the statements at issue appears to contradict his statement that McArthur made the statement about recreational use after an officer put the baggie in front of his face. (*See* Tr. 171, 175.)

**B.    Analysis**

The Magistrate Judge found that, although McArthur was in custody, the statements Dieter overheard were not in response to questioning or the functional equivalent of questioning from law enforcement. Specifically, the Magistrate Judge concluded that there was no evidence presented that an officer brought the baggie up to McArthur's face, picked up the baggie to elicit a comment from McArthur, or made any comments about the marijuana.[6] In his objections, McArthur argues that the Court must suppress his statements about recreational use and a "big bust" because entering them would violate his *Miranda* rights.

A person in police custody must receive *Miranda* warnings before being subject to interrogation. *United States v. Head*, 407 F.3d 925, 928 (8th Cir. 2005). To determine whether an officer's conduct amounts to interrogation, the standard is whether the officer engaged in express questioning or its functional equivalent. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). This standard incorporates officers' words or actions, other than those normally incident to custody, which they should know are reasonably likely to result in an incriminating response. *Id.* When a suspect in custody makes spontaneous

---

[6] The Magistrate Judge did not discuss the lack of clarity in Dieter's memory.

statements to an officer, no interrogation can be imputed to the officer. *See, e.g.*, *United States v. Tail*, 459 F.3d 854, 857-58 (8th Cir. 2006).

McArthur satisfied his burden of production for the motion to suppress by alleging that he underwent express questioning or the functional equivalent of questioning by law enforcement in the absence of *Miranda* warnings. *See United States v. Miller*, 382 F. Supp. 2d 350, 362 (N.D.N.Y. 2005); (Docket No. 473). The burden thus shifted to the United States to prove by a preponderance of the evidence that McArthur's statements were not taken in violation of *Miranda*. *See id.*; *United States v. Love*, 189 F.R.D. 557, 559 (D. Minn. 1999) (placing burden of raising suppression issues on the defendant and the burden of proving admissibility on the government).[7]

The Court will sustain McArthur's objections and suppress the two statements at issue because the United States has not met its burden of showing that the statements were not taken in violation of *Miranda*. The only witness to testify regarding the alleged statements, Dieter, had an unclear memory of events surrounding McArthur's time in custody and thus did not establish by a preponderance of the evidence that McArthur spontaneously made the statements at issue. For example, Dieter seemed to offer

---

[7] *See also Kaupp v. Texas*, 538 U.S. 626, 632-33 (2003) (placing burden on the United States to demonstrate that defendant's confession was an act of free will); *Colorado v. Connelly*, 479 U.S. 157, 168 (1986) ("Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence."); *United States v. Ollie*, 442 F.3d 1135, 1142-43 (8th Cir. 2006) (holding that the United States must prove the admissibility of statements when the defendant's suppression motion alleges that officers attempted to circumvent *Miranda* by interrogating the defendant, then giving *Miranda* warnings, then re-interrogating the defendant); *United States v. Foster*, 752 F. Supp. 2d 1060, 1063 (D. Minn. 2010) ("When a defendant contends that the government obtained evidence in violation of the Constitution, the government must prove by a preponderance of the evidence that the challenged evidence is admissible.").

inconsistent statements about whether other officers were searching the living room at the time of McArthur's statements. Dieter also had no memory of Wilhelmy's conversation about gang activity with McArthur, although Wilhelmy claims that this conversation occurred and Dieter acknowledged that the conversation could have occurred in his presence. Dieter's unclear memory about the events surrounding McArthur's time in custody raises the significant possibility that he does not remember modes of interrogation that may have prompted McArthur's statements. *See Holman v. Kemna*, 212 F.3d 413, 418-19 (8th Cir. 2000) (construing ambiguous facts in favor of defendant for issue raised in motion to suppress).

Indeed, Dieter acknowledged the possibility that an officer may have said something to McArthur prior to McArthur making the statements at issue. In particular, Dieter said it was possible that the officer who picked up the marijuana right in front of McArthur's face might have said something to McArthur, although Dieter recalled no such statement. The Court cannot conclude that McArthur's statements were spontaneous when the only witness to such statements is unsure if they were made in response to an interrogation.

Furthermore, the United States failed to establish that holding the marijuana in front of McArthur's face was not the functional equivalent of interrogation. *See Innis*, 446 U.S. at 300-01. An officer's mere discovery of a piece of evidence during a search is not the functional equivalent of interrogation. *See, e.g.*, *United States v. Hawkins*, 102 F.3d 973, 975-76 (8th Cir. 1996) (finding no *Miranda* violation where "it was the discovery of illegal drugs in [defendant's] home, not police coercion, that induced the

incriminating statements").[8] Here, however, Dieter stated that an officer lifted the baggie off the coffee table right in front of McArthur's face. McArthur characterizes this statement as meaning that the officer held a bag of drugs in his face. The United States disputes this claim and points out that Dieter never said directly that the officer held the bag for a long period of time or pushed it into McArthur's face. The Court concludes that it is ambiguous whether McArthur or the United States's interpretation of the facts is more accurate, as Dieter provided no details about how long the baggie was held in front of McArthur's face, how close the baggie was to his face, the officer's demeanor when lifting the baggie, or any other circumstances surrounding the lifting of the baggie. Accordingly, the Court cannot determine if the officer should have known that the lifting of the baggie was reasonably likely to elicit an incriminating response from McArthur. *See Innis*, 446 U.S. at 301. Because Dieter's memory and testimony surrounding McArthur's statement about recreational use are unclear, the Court concludes that the United States has not met its burden of showing that this statement is admissible.

A closer question is whether McArthur's alleged statement that "[t]here ain't gonna be no big bust here today" is admissible. Dieter's testimony was somewhat firmer regarding whether this statement was in response to interrogation, as he testified that he did not observe any officers ask McArthur a question that would have prompted this

---

[8] *See also People v. Clark*, 542 N.E.2d 138, 140-41 (Ill. App. Ct. 1989) (holding that an officer finding a gun on the defendant's person and stating "look at this" was not interrogation, where there was no evidence that the officer held up the gun for defendant's view or otherwise made an effort to display the gun).

statement.[9] However, the significant gaps in Dieter's recollections surrounding the time when McArthur was in custody undermine his credibility as a whole. Even more critically, Dieter did not testify when this statement occurred; for example, it may have been made directly after the statement about recreational use. In fact, it appears quite possible that the statement about a "big bust" occurred immediately after the statement about recreational use because Dieter only stood near McArthur for a short period of time and because the "big bust" statement was seemingly related to small marijuana baggie. Thus, it is possible that any interrogation that may have prompted the recreational use statement also prompted the "big bust" statement. Accordingly, the Court will sustain McArthur's objections and suppress the two statements allegedly overheard by Dieter.

## II. MOTION TO SUPPRESS EVIDENCE

### A. Background[10]

#### 1. XXX Maple Street

McArthur further objects to the recogmmendation that his motion to suppress evidence obtained as a result of the searches of XXX Maple Street and XXX Grant Utley Avenue NW be denied.

ATF Special Agent Russell Traurig applied for a search warrant on February 17, 2011 to search the Maple Street residence, which was believed to be one of several

---

[9] Unlike with the statement regarding recreational use, Dieter was never asked how certain he was that no one asked a question that prompted this statement.

[10] The R&R provides a more detailed factual background on this motion. (*See* R&R at 5-15.)

residences used by defendants McArthur and Christopher Wuori. (*See* United States Ex. 12 at 22.) The warrant sought documentary evidence of criminal activity, including records associated with drug trafficking and related proceeds and gang activity. (*Id.* at 28.) The warrant was signed and executed on February 17, 2011. (*Id.* at 40.) It authorized the search for documents and records relating to the Native Mob gang and the purchase and distribution of narcotics; documents related to travel; financial records; currency; photographs and photograph albums relating to the Native Mob gang and its members or narcotics; documents reflecting the addresses or telephone numbers of coconspirators, other gang member or customers; documents showing occupancy of the residence; and newspaper clippings or letters relating to any crime. (*Id.* at 34-35, 40.)

The affidavit in support of the search warrant provided a variety of information. It included information about the Native Mob's structure and activities since the mid-1990s. (*Id.* at 23-24.) It explained that McArthur was the current "Chief" of the Native Mob and that he held meetings to discuss the illegal activities of Native Mob members, including drug trafficking. (*Id.* at 24.) Confidential informants had provided information about McArthur's illegal activities from 2009 and 2010. (*Id.* at 26-28.) The affidavit described how it is common for drug traffickers to maintain and retain financial records and other information related to their illegal activities after the commission of a crime in their residences. (*Id.* at 24-26.) Furthermore, the affidavit explained that McArthur resided at the Maple Street residence, citing evidence including a personal contact made with McArthur at the residence on February 17, 2011. (*Id.* at 26.) Based on this information, Traurig stated that he believed law enforcement would find documentary evidence of

criminal activity at the residence, including records associated with drug trafficking and related proceeds and gang activity. (*Id.* at 28.)

### 2.   XXX Grant Utley Avenue NW

DEA Special Agent Travis Ocken applied for a search warrant on January 20, 2012, to search the Grant Utley Avenue residence. (United States Ex. 11 at 11.) The warrant was signed and executed on January 20, 2012. (*Id.* at 7.) Like the Maple Street warrant, this warrant sought documentary evidence of criminal activity, including records associated with the racketeering activities of the Native Mob. (*Id.* at 9, 63.) The Grant Utley Avenue search warrant authorized the search for documents, records, and items relating to the Native Mob gang, including but not limited to documents evidencing gang indicia, membership lists, nickname lists, phone numbers, gang law, lists of firearms in the gang's possession, gang-related graffiti, and lists of money in the gang's possession; property indicating membership in the Native Mob, including clothing with gang colors or other symbols; photographs and other media containing the images of co-conspirators and gang members (with or without assets or contraband); items showing occupancy of the residence; and pagers, cellular telephones, answering machines, computer hard drives, and other electronic media that could contain any of the above-mentioned items. (*Id.* at 9.)

The affidavit in support of the search warrant provided a variety of information. It explained that McArthur asserted control over the Native Mob upon his release from prison in 2007 and that he was now indicted in a federal racketeering conspiracy. (*Id.*

¶¶ 4-5, 18, 35.) It included information about the Native Mob's structure and illegal activities. (*Id.* ¶ 7.) It further described the information provided by cooperating witnesses about McArthur's illegal activities from 2009 and 2010 and as recently as May 16, 2011. (*Id.* ¶¶ 20-29, 35.) In addition, the affidavit described how gang members often keep the names of phone numbers of other individuals in the organization, along with other information related to the gang and illegal activities, in their residences. (*Id.* ¶¶ 11-12; *see also id.* ¶¶ 32-33.) Finally, the affidavit explained that McArthur resided at the Grant Utley Avenue residence, citing evidence that officers observed a vehicle registered to McArthur's girlfriend (who had resided with McArthur) parked in the alley behind the residence and that on January 10, 2012, officers conducted surveillance of the residence and observed McArthur exit the residence at 9:35 AM wearing a green coat, blue boxer shorts, white socks, and what appeared to be house slippers. (*Id.* ¶ 36.)

### B.  Analysis

McArthur objects to the Magistrate Judge's recommendation that his motion to suppress evidence stemming from these warrants be denied. The Court will overrule these objections and adopt the Magistrate Judge's recommendation.

A search warrant must be based upon a finding that there is probable cause to believe that evidence of a crime will be found in the place searched. *See United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). Probable cause exists if, considering the totality of the circumstances, a reasonable person could conclude that there is a "fair probability" that the object of the search warrant may be found in the place searched.

*United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "[T]he duty of a reviewing court is simply to ensure that the [issuing judge] had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238-39 (internal quotation marks and citation omitted); *see also United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996). Moreover, a court "may properly rely on normal inferences drawn by the surrounding circumstances and the allegations of facts contained in the affidavit." *United States v. Carlson*, 697 F.2d 231, 238 (8th Cir. 1983) (internal quotation marks omitted).

In addition, a search warrant may not be based on information that is stale. "A warrant becomes stale if the information supporting [it] is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search." *See United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009) (internal quotation marks omitted)). However, there is no bright-line test for determining when information becomes stale. *United States v. Estey*, 595 F.3d 836, 840 (8th Cir. 2010). The Court must examine the context of a specific case and the nature of the alleged crime. *Id.*

The Court concludes that the search warrants of Maple Street and Grant Utley Avenue were both supported by probable cause. In his objections, McArthur asserts generally that the affidavits in support of the search warrants failed to establish the requisite nexus between the items to be seized and the places to be searched and that the affidavits set forth information that was largely stale. McArthur has not pointed to any specific stale information in the affidavits, however, and the Court finds none. Similarly,

the Court finds a nexus between the items to be seized and the places to be searched, and McArthur offers no explanation for why such a nexus has not been established.

The Maple Street affidavit explained how McArthur was the current "Chief" of the Native Mob and involved in illegal activities, with information from a confidential information as recent as 2010. It also stated that McArthur was residing at the Maple Street residence as recently as February 18, 2011. Although the affidavit had no specific information from informants about McArthur's illegal activities after 2010, the affidavit stated that it was common for drug traffickers to maintain the items sought by the warrant at their homes and to retain them and not dispose of them following the commission of a crime. *See United States v. McNeil*, 184 F.3d 770, 775 (8th Cir. 1999). Because information about illegal activities was likely to be found in McArthur's home at the time of the warrant's issuance and execution, there was probable cause for the search and seizure. *See, e.g., United States v. Lemon*, 590 F.3d 612, 614-15 (8th Cir. 2010) (eighteen-month interval between evidence linking defendant to child pornography and warrant application did not render the information stale); *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991) (two-year-old information not stale); *United States v. Davis*, 313 Fed. App'x 672, 674 (4th Cir. 2009) (one-year-old information not stale). Furthermore, because the Native Mob was an ongoing enterprise, it was likely that information would be discovered in McArthur's home at the time of the warrant's issuance and execution. *See United States v. Horn*, 187 F.3d 781, 786 (8th Cir. 1999) ("[T]he lapse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated.").

Similarly, there was probable cause to support the Grant Utley Avenue warrant. The affidavit stated that McArthur had led the Native Mob gang since 2007 and that he had conducted a drug transaction as recently as May 2011. McArthur was also connected to the Grant Utley Avenue residence in January 2012, making it likely evidence would be found there. In addition, as with the Maple Street affidavit, this affidavit established that the items sought by the warrant are often maintained by individuals engaged in gang-related activities in their residences. For these reasons, the Grant Utley Avenue warrant is supported by probable cause.[11] Accordingly, the Court will adopt the Magistrate Judge's recommendation and deny McArthur's motion to suppress evidence obtained as a result of the searches and seizures.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **SUSTAINS in part** and **OVERRULES in part** Defendant's objections [Docket No. 756] and **ADOPTS in part** and **REJECTS in part** the Report and Recommendation of the Magistrate Judge [Docket No. 731]. **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Suppress Statements [Docket No. 473] is **GRANTED in part** and **DENIED in part** as follows:

---

[11] The Magistrate Judge also recommended that the *Leon* good faith exception would apply if there had not been a constitutional violation. The Court need not reach this issue because it has found no constitutional violation.

      a.      Defendant's motion to suppress the statements made on February 18, 2011, to Investigator Wilhelmy regarding the hit out on a Native Mob member is **GRANTED**.

      b.      Defendant's motion to suppress his statements made on February 18, 2011, that the marijuana found on the table in front of him was for recreational use and that "There ain't gonna be no big bust here today" is **GRANTED**.

      c.      Defendant's motion to suppress his statements made on February 18, 2011, that were overheard by ATF Special Agent Russell Traurig is **DENIED as moot**.

      d.      Defendant's motion to suppress statements made on February 2, 2012, is **DENIED as moot**.

      2.      Defendant's Motion to Suppress Evidence Obtained As a Result of Search and Seizure [Docket No. 478] is **DENIED.**

DATED: December 12, 2012                     ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                      JOHN R. TUNHEIM
                                                                 United States District Judge